R. A. STEWART et al. *v.* HENRY MARSTON. Appellant—JOHN KERNAN, Intervenor and Appellee.

In assumpsit of a debt *conditional'y*, prescription does not commence to run until the condition is accomplished.

APPEAL from the District Court of East Feliciana, *Ratliff,* J. Tried by a Jury. *J. Mc Vea, W. F. Kernan,* for intervenor. *Fuqua & Killbourne,* for defendants and appellants.

COLE, J.* The Cashier of the Branch of the Union Bank at Clinton was a defaulter, and suits were instituted against his sureties to make them responsible on their bonds.

While these suits were pending, viz, the *Union Bank* v. *L. Andrews,* and same v. *Nichols & Morris,* the court apppointed *George C. Comstock* and *L. Sturges,* auditors in the two cases to examine the books and accounts of the cashier, and allowed each of them two hundred dollars in each case.

*L. Sturges* transferred to intervenor on the 19th of April, 1842, the amount awarded to him by the court.

After this transfer was made, *R. A. Stewart* issued a *fi. fa.* on a judgment due him by *L. Sturges,* and made a pretended seizure of the claim in the hands of the bank, and caused it to be seized and sold, and purchased it. He subsequently institutes this suit to recover the claim from *Henry Marston,* as cashier, and prays for judgment against him in that capacity. In his amendment, however, he prays for judgment against him individually, alleging that he had purchased the assets of the bank and assumed its liabilities, and bases his right to recover upon this alleged assumpsit.

*John Kernan,* the intervenor, alleges that the claim of *Lewis Sturges* was transferred to him prior to the seizure and sale of *Stewart.* He avers that *Marston* is not liable as cashier; because, before the institution of this suit, the branch had ceased to exist in Clinton, and *Marston,* of course, ceased to be cashier, but he also avers, that *Marston* had purchased the assets of the branch and assumed all its liabilities; this among the rest.

The plaintiff, upon the trial below, took a judgment of nonsuit; the claim of the intervenor was tried before a jury, and he obtained a verdict for his demand.

It is urged by appellant that *Kernan* cannot recover, because the assumpsit of *Marston* is limited to debts created during his administration as cashier, and the allowance to the arbitrators was made anterior to that epoch. This objection is invalid, because a draft was given by *Sturges* for the $400, the amount allowed him as expert, on the cashier of the Branch of the Union Bank at Clinton, and was left for consideration by the board. The bank considered it was the intention of the court to allow the arbitrators but two hundred dollars in each case. *Hardesty,* in his testimony, says: "That *George C. Comstock,* one of the auditors, owed a note in the bank for $400, on which the bank brought suit, and in defence to the suit of the bank, *Comstock* pleaded the award of $400, which had been allowed him as one of the auditors.

---

*The HON. J. L. COLE was elected on the 6th of April and took his seat on the 4th of May, in place of the HON. J. N. LEA, whose time had expired.

" It was the understanding in the Board of Directors, and with those connected with the amount in document K (the draft), that the action of the board should be determined by the decision of the suit between the Union Bank and *Comstock*. Witness so advised *Stewart*, who was the claimant of the award to *Sturges* by virtue of his seizure, and *John Kernan* was also apprised of it, as the transferee indirectly of *Lewis Sturges*."

The testimony establishes that the bank was to pay the $400, the amount of the draft, in the event their view of the compensation to the experts was determined to be erroneous by the decision in their suit with *Comstock*, who was sued on a note due by him to the bank, and filed his fees of $400 in compensation. This case was decided adversely to their view ; the plea of compensation was allowed, and their liability to pay became at once fixed.

It is true that the obligation of the bank to pay the fees of *Sturges* was created before the administration of *Marston* as cashier, but the promise of the bank to pay them *to a third person*, in the event of the occurrence of a certain contingency was an obligation created during the period that *Marston* was cashier.

Although the bank refused to accept absolutely the draft, there was an understanding that the amount of the fees should be paid on the happening of a certain event ; *Marston* was certainly aware of this convention, and it is not equitable that the intervenor should lose them, inasmuch as *Marston* assumed to pay all the obligations created by the bank during the period that he was cashier.

The plea of prescription cannot prevail, because the assumpsit of the bank could only be prescribed by the lapse of ten years, and it only began to run from the time when the condition, on which the liability of the bank depended, was accomplished, viz, the decision of the suit in the case of the *Union Bank* v. *Comstock*.

This suit was decided on the 25th January, 1850, and the service of the petition of *Kernan* was accepted the 21st June, 1855.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be affirmed with costs.

Chief Justice MERRICK took no part in this case.